UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

**ANDERSON RIBEIRO LINS,**

    **Petitioner- Plaintiff**,

v.

**TAMMY MARICH,** in her official capacity as Acting Field Office Director, Buffalo Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security; **MICHAEL BALL,** in his official capacity as Warden, Buffalo Federal Detention Facility; **PATRICIA HYDE,** Acting New England Field Office Director for U.S. Immigration and Customs Enforcement; **KRISTI NOEM,** in her official capacity as Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, **Respondents-Defendants.**

Case No. 1:25-cv-01230

**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

1. This case is about Anderson Ribeiro Lins ("Petitioner" or "Mr. Lins"), who is currently detained in the custody of the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE) at the Buffalo Federal Detention Facility ("BFDF") and was detained without any notice or an opportunity to respond by ICE on or about November 1, 2025. He has been detained at BFDF since or about November 2, 2025.

2. Mr. Lins is forty-five (45) years old and prior to his detention, lived in the United States in Somerville, Massachusetts.

1

3. Mr. Lins was arrested by ICE without any notice or warning when he appeared for a scheduled check-in with ICE on or about November 1, 2025, in Burlington, Massachusetts. During his previous check-in on October 29, 2025 at the same Burlington Office. ICE had cleared Mr. Lins as being compliant with the conditions of his Order of Supervision (OSUP).

4. At the time of his unnoticed detention on or about November 1, 2025, Mr. Lins had been required to upload photographs of himself with his whereabouts once a week as a condition of his OSUP. Mr. Lins had been in full compliance with his OSUP conditions, as ICE had communicated with him just days prior. Mr. Lins believed that - as has previously been the case - he would check-in and return home.

5. On November 1, 2025, ICE told Mr. Lins he had violated his OSUP conditions by uploading too many photographs. Mr. Lins is required to upload photographs of himself with his whereabouts only once a month, not once a week, as ICE had previously advised.

6. To the extent that Respondents revoked Mr. Lins's OSUP without prior notice or opportunity to be heard, Respondents have acted in violation of statute, regulations, and the U.S. Constitution.

7. To comport with due process, immigration detention must bear a reasonable relationship to its two regulatory purposes: ensuring the appearance of noncitizens at future hearings and preventing danger to the community pending the completion of removal. *See Zadvydas v. Davis*, 533 U.S. 690, 691 (2001). Here, despite no changed circumstances regarding either flight risk or public safety, ICE nevertheless detained Mr. Lins without notice, a hearing, or even an interview. *See Rombot v. Souza*, 296 F. Supp. 3d 383, 388–89 (D. Mass. 2017) (finding a due process violation and explaining that ICE "never asserted that Rombot is a danger to the community or a flight risk, or that he violated the conditions of his [OSUP]. . . . The

Supreme Court has recognized that a 'alien may no doubt be returned to custody upon a violation of [supervision] conditions,' but it has never given ICE a carte blanche to re-incarcerate someone without basic due process protection.") (*quoting Zadvydas*, 533 U.S. at 700).

8.  It has long been settled in the Second Circuit that immigration authorities are required to adhere to their own regulations. *See Montilla v. I.N.S.*, 926 F.2d 162, 169 (2d Cir. 1991). Drawing on the doctrine set forth by the Supreme Court in another immigration case, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–67 (1954), the Second Circuit held that where an agency has promulgated a regulation impacting individual rights, "fundamental notions of fair play underlying the concept of due process" require that the agency adhere to that regulation. *Montilla*, 926 F.2d at 167.

9.  Adherence to the Constitution and regulations is of utmost importance in this case because there was no neutral judicial oversight of ICE's unnoticed detention of Mr. Lins on or about November 1, 2025. In the somewhat analogous context of parole revocation, the Supreme Court has held that "due process requires that after the arrest, the determination that reasonable ground exists for revocation of parole" should be made by an "independent officer" who is "not directly involved in the case." *Morrissey v. Brewer*, 408 U.S. 471, 485 (1972); *see also United States v. Sanchez*, 225 F.3d 172, 175 (2d Cir. 2000) (in context of revocation of supervised released, requiring notice and opportunity to be heard by neutral hearing body). ICE has no process for bringing individuals re-detained following release on an OSUP before a neutral magistrate for an assessment of the propriety of their detention. Therefore, ICE's actions must scrupulously conform to the governing regulations, constitutionally construed.

10. Mr. Lins brings this action to seek injunctive, habeas and declaratory relief ordering Respondents to release him. Mr. Lins's ongoing detention-the purpose of which is to

3

remove him from the United States-flow from his unlawful detention or about November 1, 2025.

11.     The power of the government to detain and deport immigrants is not without limitations. To the contrary, the power of government to act is delineated by a specific set of statutes and federal regulations, and subject to the limitations of the United States Constitution. ICE's violation of its own regulations, designed to protect the liberty interests of individuals who were deemed to lack flight risk or dangerousness, merits reversal of the revocation and restoration of Mr. Lins's authorization to live in the United States. and, at minimum, the opportunity for an orderly departure.

12.     Accordingly, to vindicate Petitioner's constitutional rights, this Court should grant the instant petition for a writ of habeas corpus.

## PARTIES

13.     Petitioner is currently detained at Buffalo Federal Detention Facility under the direct control, of Respondents and their agents. Prior to his unnoticed detention by ICE on or about November 1, 2025, he was residing in Somervile, Massachusetts.

14.     Respondent-Defendant Tammy Marich is the Acting Field Office Director for the Buffalo Field Office of ICE Enforcement and Removal Operations. She is sued in his official capacity only. Acting Field Office Director Marich is charged with exercising authority over the removal operations carried out by ICE in the Buffalo geographic region, which includes the BFDF, and for determinations on whether and where Petitioner-Plaintiff is to be detained prior to removal.

15.     Respondent-Defendant Michael Ball is sued in his official capacity as Warden of the BFDF, the ICE facility at which Petitioner is currently detained.

16. Respondent-Defendant Patricia Hyde is named in her official capacity as the acting New England Field Officer Director for U.S. Immigration and Customs Enforcement within the United States Department of Homeland Security ("DHS"). In this capacity, she is responsible for the administration of immigration laws and the execution of detention and removal determinations and is legal custodian of Petitioner. Respondent-Defendant's Hyde's address is 1000 District Avenue Burlington, MA 01803. Upon information and belief, Respondent- Defendant's Hyde is charged with exercising authority over the ICE's New England Field Office including, but not limited to, the detention of Mr. Lins.

17. Respondent-Defendant, Kristi Noem, is named in her official capacity as the Secretary, U.S. Department of Homeland Security. In this capacity, she is responsible for overseeing ICE's day-to-day operations, leading approximately 20,000 ICE employees, including Respondent Marich.

18. Respondent-Defendant U.S. Department of Homeland Security ("DHS") is an executive department of the United States Government headquartered in Washington, D.C. DHS is the parent agency of ICE.

19. Respondent-Defendant ICE is a component agency of DHS and is responsible for enforcing federal immigration law, including the detention and removal of immigrants.

## JURISDICTION

20. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

21. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), U.S.C. § 701 (the Administrative Procedure Act), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

22. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

23. Venue is proper because Petitioner is detained at Buffalo Federal Detention Facility in Batavia, New York, which is within the jurisdiction of this District.

24. Venue is proper in this District because Respondents are officers, employees, or agencies of the United States, a substantial part of the events or omissions giving rise to Petitioner's claims occurred in this District, and no real property is involved in this action. 28 U.S.C. § 1391(e).

## REQUIREMENTS OF 28 U.S.C. § 2243

25. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

26. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## STATEMENT OF FACTS

27. Mr. Lins is a 45-year-old citizen of Brazil. He previously suffered persecution in his home Country due to his bisexual orientation and his same-sex relationship with another man.

28. Mr. Lins escaped Brazil on November 20, 2024 and he entered the U.S. on December 14, 2024 to seek asylum.

29. Mr. Lins was arrested by ICE without any notice or warning when he appeared for regularly scheduled check-in with ICE on or about November 1, 2025 in Burlington, Massachusetts. Mr. Lins has been checking in with ICE in Burlington, Massachusetts since July 2025. He has been detained at BFDF since or about November 2, 2025.

30. At the time of his unnoticed detention on or about November 1, 2025, Mr. Lins had been required to upload photographs of himself with his whereabouts once a week as a condition of his Order of Supervision (OSUP). These conditions were communicated to him by his caseworker in Virginia named April when he was originally released on an OSUP in January 2025.

31. Mr. Lins had been in full compliance with his OSUP conditions. During his previous check-in on October 29, 2025 at the same Burlington Office. ICE had cleared Mr. Lins as being compliant with the conditions of his OSUP.

32. On November 1, 2025, Mr. Lins believed that-as has been the case days earlier - he would check-in and return home. However, on that date, ICE told Mr. Lins he had violated his OSUP conditions by uploading too many photographs. Apparently, Mr. Lins is required to upload photographs of himself with his whereabouts only once a month.

33. Federal regulations specify that ICE may only release such individuals if they "demonstrate[] to the satisfaction of the Attorney General . . . that his or her release will not pose

7

a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal." 8 C.F.R. § 241.4(d). These requirements—flight risk and danger—reflect constitutional constraints, since only individuals who pose a flight risk or danger may be civilly detained. *See Zadvydas v. Davis*, 533 U.S. 690 (2001).

34. Mr. Lins, having been previously released on an OSUP pursuant to this process, was therefore deemed by Respondents to lack flight risk or dangerousness. Mr. Lins has also never been arrested or had any interactions with the criminal justice system.

35. To comport with due process, detention must bear a reasonable relationship to its two regulatory purposes—to ensure the appearance of noncitizens at future hearings and to prevent danger to the community pending the completion of removal. *Zadvydas*, 533 U.S. at 690-691 (2001).

36. ICE determined that Mr. Lins is neither a flight risk nor a danger when they granted him an OSUP in January 2025. Since that date, Mr. Lins's circumstances have not changed, and he has remained in compliance with the OSUP.

37. Procedural due process constrains governmental decisions that deprive individuals of property or liberty interests within the meaning of the Due Process Clause of the Fifth Amendment.

38. Because Mr. Lins's detention on November 1, 2025, lacked the procedural protections that such a significant deprivation of liberty requires under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, his continued detention is unlawful. *See Mathews*, 424 U.S. at 332 (1976); *see also Perry v. Sindermann*, 408 U.S. 593, 601-03 (1972) (reliance on informal policies and practices may establish a legitimate claim of entitlement to a constitutionally protected interest). Infringing upon a protected interest triggers a right to a

hearing before that right is deprived. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70 (1972).

39. The revocation of Mr. Lins's release on OSUP does not satisfy the minimum requirements of due process, because that revocation is not the product of any individualized review and alleges no relevant change in circumstances altering the original assessment of his risk of flight. *See Rombot*, 296 F. Supp. 3d at 388. *See also, Torres-Jurado v. Biden*, 2023 U.S. Dist. LEXIS 193725 at *12 (S.D.N.Y. Oct. 29, 2023) (stating that "due process, at a minimum" requires the government to afford meaningful notice and an opportunity to be heard and that the opportunity must be meaningful) (*citing to Ying Fong v. Ashcroft*, 317 F. Supp. 2d 398, 403 (S.D.N.Y. 2004)).

40. The INA specifies circumstances upon which a person may be released from custody, and it does not provide for re-detention except impliedly for a violation of those terms. The relevant regulatory framework (8 C.F.R. §§ 241.4(l) and 241.13(i)) authorizes revocation of an individual's release on an OSUP only in certain contexts. Section 241.4(l) specifies revocation may occur upon violation of the conditions of release or when, in the district director's opinion, revocation is in the public interest because one of four conditions is met: "(1) the purposes of release have been served; (2) the alien violates any condition of release; (3) it is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (4) the conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2). Section 241.13(i) provides further conditions where release decisions may be revoked, only for the purpose of removal. Notably, several of these provisions are found only in the regulations and not the statute and are ultra-vires, but even to the extent they apply, Respondents have failed to comply with the process.

41. Mr. Lins has, at minimum, a regulatory right to a detailed explanation for the reasons of revocation as well as an interview to contest the basis for the revocation. At a minimum, ICE "has the duty to follow its own federal regulations." *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003) (*quoting Nelson v. I.N.S.,* 232 F.3d 258, 262 (1st Cir. 2000)). It has failed to do so here.

42. When the government fails to comply with its own federal regulations, as it did when it revoked Mr. Lins's release in violation of its own procedures, the action should be found invalid. *See Rombot*, 296 F. Supp. 3d at 388.

43. Moreover, under the APA, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. The reviewing Court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. §§ 706(2)(A), (E).

44. The decision to detain Mr. Lins, who had previously been released on an OSUP, and neither violated nor failed to comply with the OSUP must be reviewed by this Court and found to be "arbitrary, capricious, an abuse of discretion and not in accordance with the law." 5 U.S.C. §§ 706(2)(A), (E). Absent this Court's intervention, Mr. Lins does not have any "remedy" to challenge the decision of Respondents. *See Torres-Jurado*, 2023 U.S. Dist. LEXIS 193725 at *14 (finding that "[a]lthough procedural requirements can seem like a mere formality, they promote 'agency accountability' and ensure that the parties—and where relevant, the public – can respond fully and in a timely manner to an agency's exercise of authority.") (*citing Bd. Of Regents of State Colleges*, 140 S. Ct. 1891).

**CLAIMS FOR RELIEF**

## COUNT I:
## MR. LINS'S DETENTION VIOLATES THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE BECAUSE IT BEARS NO REASONABLE RELATIONSHIP TO ANY LEGITIMATE PURPOSE

45. Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

46. To comport with due process, detention must bear a reasonable relationship to its two regulatory purposes—to ensure the appearance of noncitizens at future hearings and to prevent danger to the community pending the completion of removal. *Zadvydas*, 533 U.S. at 690-691.

47. Mr. Lins is neither a danger nor a flight risk. His detention is arbitrary on its face.

48. Mr. Lins has dutifully complied with every condition of his OSUP and no change in circumstances exists to warrant the revocation of his OSUP.

49. Because Petitioner's detention has been unaccompanied by the procedural protections that such a significant deprivation of liberty requires under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, his continued detention is unlawful.

## COUNT II:
## MR. LINS'S DETENTION VIOLATES THE INA, REGULATIONS THEREUNDER, AND THE FIFTH AMENDMENT DUE PROCESS CLAUSE BECAUSE HE HAS BEEN RELEASED ON A VALID ORDER OF SUPERVISION

50. Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

51. Respondents' presumed basis for re-detaining Petitioner is uploading too many photographs thus violating the conditions of his OSUP. However, during his previous check-in on October 29, 2025. ICE had cleared Mr. Lins as being compliant with the conditions of his OSUP.

52. Under the terms of this statute and the governing regulations, Petitioner's detention is unlawful.

### COUNT III:
### MR. LINS'S RE-DETENTION BY RESPONDENTS VIOLATES THE APA AND THE ACCARDI DOCTRINE

53. Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

54. The APA provides that a court "shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When the government has promulgated "[r]egulations with the force and effect of law," those regulations "supplement the bare bones" of federal statutes, such that the agencies are bound to follow their own "existing valid regulations." *United States ex rel. Accardi Shaugnessy*, 347 U.S. 260, 266, 268 (1954). The *Accardi* doctrine also obligates agencies to comply with procedures it outlines in its internal manuals. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (finding that an agency is obligated to comply with procedural rules outlined in its internal manual).

55. To the extent that Respondents have revoked Mr. Lins's OSUP without notice or an opportunity to be heard, they violated the statute and the applicable regulations–8 C.F.R. §§ 241.4(l) and 241.13(i)–by failing to provide him with a particularized notice of the reason(s) of the revocation of his release or an opportunity to respond to the allegations contained therein.

56. Mr. Lins has no adequate remedy at law.

### COUNT IV:
### MR. LINS'S RE-DETENTION BY RESPONDENTS VIOLATES THE APA, 5 U.S.C. § 706(2)

57. Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

58. The APA requires courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

59. Respondents' re-detention of Mr. Lins who was in full and complete compliance with his OSUP was arbitrary and capricious. Respondents failed to articulate a reasoned explanation for their decision in light of all available evidence.

60. A court reviewing agency action "must assess … whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment; it must "examine[e] the reasons for agency decisions- or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (quotations omitted).

61. Mr. Lins has no adequate remedy at law.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Enjoin Petitioner's removal or transfer outside the jurisdiction of this Court and the United States pending its adjudication of this petition;

(3) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days.

(4) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(5) Grant any further relief this Court deems just and proper.

Respectfully submitted,

/s/ Reuben Kerben
Reuben Kerben
80-02 Kew Gardens Rd #307
Kew Gardens, NY 11415

/s/ *Yifei He*
Yifei He (*to be admitted pro hac vice*)
32 Broadway Suite 1710
New York, NY 10004


*Counsels for Petitioner*

Dated: November 20, 2025

## **VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, ANDERSON RIBEIRO LINS, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 20th day of November, 2025.

/s/ Reuben Kerben
Reuben Kerben
80-02 Kew Gardens Rd #307
Kew Gardens, NY 11415


/s/ *Yifei He*
Yifei He (*to be admitted pro hac vice*)
32 Broadway Suite 1710
New York, NY 10004